1

2

3

4          UNITED STATES DISTRICT COURT

5          NORTHERN DISTRICT OF CALIFORNIA

6

7

8    SMILEY J. HARRIS

9          Plaintiff,                              No. C 07-0459 PJH

10          v.                                     **ORDER DISMISSING COMPLAINT WITH
                                                   LEAVE TO AMEND; ORDER DENYING**
11    BUSINESS, TRANSPORTATION AND                 **REQUEST TO PROCEED IFP; ORDER**
      HOUSING AGENCY, et al.,                      **DENYING MOTION FOR PRELIMINARY**
12                                                 **INJUNCTION; ORDER VACATING CASE**
          Defendants.                              **MANAGEMENT CONFERENCE DATE**
13    _____/

14          Plaintiff Smiley J. Harris filed this action on January 23, 2007, and also filed a

15    request for leave to proceed in forma pauperis ("IFP"), and a motion for preliminary

16    injunction.  On April 2, 2007, plaintiff filed an amended complaint, adding allegations of

17    facts that have occurred since the filing of the original complaint, and also adding two new

18    causes of action.

19          Because the court finds that the complaint must be DISMISSED pursuant to 28

20    U.S.C. § 1915(e) for failure to state a claim, the request to proceed IFP is DENIED.

21    Because plaintiff has not met the standard for issuance of injunctive relief, the motion for

22    preliminary injunction is DENIED.

23                              **BACKGROUND**

24          The following statement of facts is based on the allegations in the first amended

25    complaint.  Plaintiff is a resident of Lake County, California.  He was ordained as a minister

26    in the Universal Life Church in 1999, and subsequently became minister to a congregation

27    known as the "CHURCH OF THE GREATER FAITH AND REDEMPTION."  He asserts that

28    this congregation forbids the use or possession of social security numbers, based on the

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

belief that the social security number is a component of the "Mark of the Beast."

Based on a desire for "Oneness with the One God," plaintiff determined to "revoke and/or rescind all preexisting contracts with the United States Government;" and filed notice with Lake County to that effect in December 2000.  In March 2001, plaintiff filed two affidavits in the Lake County Superior Court, one announcing his intention to surrender his driver's license, and one indicating his intention to revoke his birth certificate.  In May 2001, plaintiff sent the Lake County Superior Court an affidavit regarding "a Freeman's Right to Travel," and a notice of "Intent of Traveler at Law."

In June 2001, plaintiff purchased an automobile.  Three days later, he returned the automobile's license plates and registration to the California Department of Motor Vehicles.  In December 2001, plaintiff, who claims he was in possession of an "International Driver's Permit," was arrested by the Lake County Sheriff's Department for driving without registration, insurance, or license.  His automobile was towed.  In January 2002, plaintiff accepted an offer of probation from the court, and re-applied for a California driver's license.

In November 2002, plaintiff received a citation from the California Highway Patrol, and his International Driver's Permit was seized.  In December 2002, plaintiff was issued a citation by Officer Chris Macedo of the Lake County Sheriff's Department.  He was cited for violation of California Penal Code § 148(a)(1) (resisting arrest), and for violation of California Vehicle Code §§ 22350 (driving over the speed limit), 12951(a) (failure to possess a driver's license), and 16028(a) (no proof of financial responsibility).  He was arrested and jailed, and his automobile was impounded.  Plaintiff was released on bail after spending four nights in jail.  Some of the charges were subsequently dismissed, although plaintiff was convicted of the charge of driving over the speed limit.

In January 2003, the court revoked plaintiff's probation, based on evidence that plaintiff had violated the terms of his probation.  In February 2003, plaintiff was arrested and jailed for the alleged probation violation.  The charged was dismissed in March 2003.

In July 2003, plaintiff submitted a written claim in compliance with California

2

**United States District Court**
For the Northern District of California

1    Government Code § 910.4.  He claims to have received no response from defendants.  In

2    November 2003, the Lake County Superior Court ordered the return of plaintiff's property,

3    including an "International Driver's License," with an expiration date of March 1, 2004.  In

4    February 2004, plaintiff allowed his California driver's license to expire.

5           On February 12, 2004, plaintiff filed case No. C-04-0603 EDL in the U.S. District

6    Court, Northern District of California, against Lake County; Lake County Sheriff Rodney

7    Mitchell; Gary Luck; and Patrick McMahon.

8           In May 2004, plaintiff was stopped by Sergeant McMahon of the Lake County

9    Sheriff's Department.  Plaintiff claims that although he was in possession of a "valid"

10   International Driver's License "issued from Honduras," he was nonetheless arrested and his

11   automobile was impounded.  He was charged and found guilty.  In September 2004,

12   plaintiff was stopped on two different occasions by officers of the Lake County Sheriff's

13   Department for driving without a license, and was charged and found guilty.

14          In February 2005, plaintiff notified the Social Security Administration that he was

15   "surrendering" the social security number that had been issued to him.

16          Also in February 2005, on two different occasions, plaintiff was stopped by Sergeant

17   McMahon of the Lake County Sheriff's Department for driving without a license, and was

18   stopped by the California Highway Patrol for violation of California Health & Safety Code

19   § 11358 (cultivation of marijuana), and California Vehicle Code § 23222 (possession of less

20   than one ounce of marijuana), § 22349(a) (driving over the speed limit), and

21   § 12500(a) (driving without a license).

22          In March 2005, plaintiff was stopped by Sergeant Chris Macedo of the Lake County

23   Sheriff's Department, and cited for driving without a license.  His automobile was towed.

24   Plaintiff was subsequently found guilty of a misdemeanor charge of driving without a

25   license.  He did not appeal the decision.

26          On May 9, 2005, the court granted defendants' motion for summary judgment in

27   Harris v. Lake County, Case No. C-04-0603 EDL.  Judgment was entered on May 10,

28   2005.  Plaintiff filed a notice of appeal.

United States District Court

For the Northern District of California

1    In June 2005, plaintiff was found guilty on two charges of driving without a license (in

2    February 2005 and March 2005), and was sentenced to 60 days in the County Jail.  On

3    June 14, 2005, "[w]hile appearing for" those two charges, plaintiff was again stopped by

4    Lake County Sheriff's Officers for driving without a license.  His automobile was

5    impounded, and another complaint was filed in case No. 905679, charging violation of

6    California Vehicle Code § 12500(a) (driving without a license).  That charge was dismissed

7    on October 28, 2005.

8    Also in June 2005, plaintiff filed case No. C-05-2555 EDL in the U.S. District Court,

9    Northern District of California, against Lake County; the Lake County Board of Supervisors;

10   the Lake County Sheriff's Department; Rodney Mitchell, Sheriff of Lake County; and

11   Sergeants Chris Macedo and Patrick McMahon of the Lake County Sheriff's Department.

12   On February 17, 2006, pursuant to a request from plaintiff, the complaint was dismissed

13   without prejudice.

14   In March 2006, plaintiff filed a complaint with the "Board of Control" against the

15   California Department of Motor Vehicles.  He claims that he received no response to this

16   complaint.  Also in March 2006, plaintiff filed a claim with Lake County pursuant to

17   California Government Code § 911.2.  This claim was rejected by Lake County in April

18   2006, on the ground that it was untimely under Government Code § 945.3.  Plaintiff claims

19   that this denial of his claim was unconstitutional.

20   In November 2006, plaintiff acquired another automobile, a 1989 Dodge Caravan,

21   which he registered in his name "as the only way to release the previous owner from

22   liability with the automobile."

23   On December 13, 2006, the judgment in case No. C-04-0603 EDL was affirmed by

24   the Ninth Circuit.  See Harris v. Lake County, 2006 WL 3699049 (9th Cir., Dec. 13, 2006).

25   On January 18, 2007, plaintiff received a notice of "Intent to Suspend" from the

26   California Department of Motor Vehicles, advising him that the registration on his newly-

27   acquired 1989 Dodge Caravan would be suspended if plaintiff did not provide proof of

28   insurance.  On February 7, 2007, the DMV did in fact suspend the registration of the 1989

United States District Court

For the Northern District of California

1    Dodge Caravan.

2          On February 18, 2007, while driving in Sonoma County, plaintiff was stopped by an

3    officer of the Vallejo Police Department, and cited for violation of Vehicle Code § 22350

4    (unsafe speed), § 24601 (no license plate light), § 24525(a) (headlamp out), and

5    § 14601.1(a) (driving on suspended license).  The officer detained plaintiff at the scene for

6    approximately 30-40 minutes.  He also impounded the 1989 Dodge Caravan, and had it

7    towed.

8          On March 1, 2007, plaintiff received notice of a lien sale for the 1989 Dodge

9    Caravan.  The lien sale was set for April 2, 2007.  Plaintiff submitted an opposition to the

10   notice of lien sale, but was advised by the DMV that his opposition was untimely because it

11   was not properly submitted within 10 days of the original mailing.  On April 2, 2007, plaintiff

12   filed the amended complaint in this action, apparently seeking some sort of injunctive relief

13   to halt the lien sale.

14         Plaintiff alleges claims under 42 U.S.C. § 1983 for violation of his rights under the

15   United States Constitution, and also alleging claims under the California Constitution and

16   the California Civil Code.  Defendants are the California Business, Transportation and

17   Housing Agency ("BTH"); Barry Sedlik, alleged to be the "Director" of the BTH;[1] the

18   California Department of Motor Vehicles ("DMV"); George Valverde, Director of the DMV;

19   Lake County; the Lake County Sheriff's Department; the Lake County Board of Supervisors

20   (Ed Robey, Jeff Smith, Gary Lewis, Anthony Farrington, and Rob Brown); Rodney Mitchell,

21   Sheriff of Lake County; and Sergeants Chris Macedo and Pat McMahon of the Lake County

22   Sheriff's Department.

23         Plaintiff asserts seven causes of action.  In the first cause of action, plaintiff alleges

24   that, in taking actions to enforce California Vehicle Code § 12500(a) beginning in June

25   2001, defendants violated the Religious Freedom Restoration Act of 1993, 42 U.S.C.

26   _____

27         [1]  The website for the BTH identifies Dale E. Bonner as the Secretary of BTH.  Barry
28   Sedlik is identified as Undersecretary for Economic Development and a Special Advisor.  See
     **http://www.bth.ca.gov/contactus/index.asp** (last visited April 17, 2007).

§ 2000bb-1 ("RFRA"), and also violated his rights under the First Amendment to the United States Constitution, and California Civil Code §§ 51(e)(3), 51(7), and 52.1

In the second cause of action, plaintiff alleges that, in taking actions to enforce Vehicle Code § 12500(a) beginning in June 2001, defendants violated his rights under the First and Fourth Amendments to the United States Constitution, and also violated Civil Code §§ 51(e)(3), 51(7), and 52.1.

In the third cause of action for false arrest, plaintiff alleges that, in arresting him on June 14, 2005, jailing him, and filing charges for violations of Vehicle Code § 12500(a), defendants violated Article 1, §§ 1, 2, 8, 11, 19, and 21 of the California Constitution; violated his rights under the Fourth, Fifth, and Sixth Amendments to the United States Constitution; and violated Civil Code §§ 51(e)(3), 51.7, and 52.1.

In the fourth cause of action for false imprisonment, plaintiff alleges that defendants falsely arrested him on June 14, 2005, in violation of his rights under Article 1, §§ 1, 2, 8, 11, 19, and 21 of the California Constitution; the Fourth, Fifth, and Sixth Amendments to the United States Constitution; and Civil Code §§ 51(e)(3), 51.7, and 52.1.

In the fifth cause of action for malicious prosecution, plaintiff alleges that defendants' practices and procedures which caused him to be prosecuted during the period from June 14, 2005, through October 28, 2005, constituted a violation of his rights under Article 1, §§ 1, 2, 8, 11, 19, and 21 of the California Constitution; the Fourth Amendment to the United States Constitution; and Civil Code §§ 51(e)(3), 51.7, and 52.1.

In the sixth cause of action for false arrest, plaintiff alleges that in arresting him "on and through the period of June 2001 to the present day," for violations of Vehicle Code § 12500(a), defendants violated Article 1, §§ 1, 2, 8, 11, 19, and 21 of the California Constitution; violated his rights under the Fourth, Fifth, and Sixth Amendments to the United States Constitution; and violated Civil Code §§ 51(e)(3), 51.7, and 52.1.

In the seventh cause of action for false imprisonment, plaintiff alleges defendants' practices and procedures which caused him to be prosecuted "on and through the period of June 2001 to present day," constituted a violation of his rights under Article 1, §§ 1, 2, 8,

6

United States District Court

For the Northern District of California

11, 19, and 21 of the California Constitution; the Fourth Amendments to the United States Constitution; and Civil Code §§ 51(e)(3), 51.7, and 52.1.

In the eighth cause of action for malicious prosecution, plaintiff alleges that defendants' practices and procedures which caused him to be prosecuted "through the period of June 2001 thru to present day," constituted a violation of his rights under Article 1, §§ 1, 2, 8, 11, 19, and 21 of the California Constitution; the Fourth Amendment to the United States Constitution; and Civil Code §§ 51(e)(3), 51.7, and 52.1.

In the ninth cause of action for malicious prosecution, plaintiff alleges that the practices and procedures implemented by defendant BTH (which also includes defendant DMV, defendant George Valverde, and defendant Barry Sedlik) caused plaintiff to be unlawfully prosecuted "during the period of January 2007 through to present day," in violation of his rights under Article 1, §§ 1, 2, 8, 11, 19, and 21 of the California Constitution; the Fourth Amendments to the United States Constitution; and Civil Code §§ 51(e)(3), 51.7, and 52.1.

Plaintiff seeks compensatory damages, and injunctive relief.[2]

**DISCUSSION**

A.      Request for Leave to Proceed In Forma Pauperis

1.      Legal Standard

The court may authorize a plaintiff to file an action in federal court without prepayment of fees or security if the plaintiff submits an affidavit showing that he or she is unable to pay such fees or give security therefor.  28 U.S.C. § 1915(a).  When a complaint is filed in forma pauperis, it must be dismissed prior to service of process if it is frivolous or malicious, fails to state a claim, or seeks monetary damages from defendants who are immune from suit.  See 28 U.S.C. § 1915(e)(2); see also Franklin v. Murphy, 745 F.2d 1221, 1226-27 (9th Cir. 1984).  When a complaint is dismissed under § 1915(e), the plaintiff

---

[2]  The caption of the first amended complaint states that it is an "amended complaint for declaratory, injunctive, and compensatory relief," but plaintiff does not actually request any declaratory relief and does not plead any facts showing entitlement to such relief.

United States District Court
For the Northern District of California

1  should be given leave to amend the complaint with directions as to curing its deficiencies,

2  unless it is clear from the face of the complaint that the deficiencies could not be cured by

3  amendment.  See Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (dismissal of

4  complaint as frivolous).

5      A complaint is frivolous for purposes of § 1915(e) if it lacks any arguable basis in fact

6  or in law.  Neitzke v. Williams, 490 U.S. 319, 328-30 (1989).  A complaint lacks an arguable

7  basis in law only if controlling authority requires a finding that the facts alleged fail to

8  establish an arguable legal claim.  Guti v. INS, 908 F.2d 495, 496 (9th Cir. 1990).  While

9  the facts alleged in the complaint should generally be accepted as true for purposes of

10  entering judgment on the pleadings, clearly baseless factual contentions may be dismissed

11  as frivolous under § 1915.  Denton v. Hernandez, 504 U.S. 25, 32 (1992).

12      2.  Analysis

13          a.  Requirements of Rule 8(a).

14      As an initial matter, the court finds that the complaint generally fails to put each

15  defendant on notice of the claim or claims asserted against such defendant.  Under Federal

16  Rule of Civil Procedure 8, a complaint "shall contain . . . a short and plain statement of the

17  claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  Under this federal

18  "notice pleading" standard, the complaint must give the defendant "fair notice of what the

19  plaintiff's claim is and the grounds upon which it rests.  Swierkiewicz v. Sorema N.A., 534

20  U.S. 506, 512 (2002).  Put another way, a plaintiff is required to include in a complaint

21  "sufficient allegations to put defendants fairly on notice of the claims against them."

22  McKeever v. Block, 932 F.2d 795, 798 (9th Cir. 1991).

23      In the present case, with the exception of the ninth cause of action, plaintiff does not

24  allege facts constituting a specific claim against any specific defendant.  Instead, he alleges

25  his claims against "defendants."  In so doing, plaintiff fails to clarify which defendant or

26  defendants committed which alleged wrong.  Plaintiff must plead facts showing the

27  connection between the actions he attributes to each defendant, and the claim or claims he

28  asserts against that defendant.

United States District Court

For the Northern District of California

2.      Limitation of Action

All claims asserted by plaintiff in this action, including the claims for constitutional

violations, are governed by California's two-year statute of limitations for personal injury,

which is codified at California Code of Civil Procedure § 335.1.  See, e.g., Wilson v. Garcia,

471 U.S. 261, 276 (1985) (section 1983 claim is governed by forum state's statute of

limitations for personal injury actions); Gatto v. County of Sonoma, 98 Cal. App. 4th 744,

760 (2002) (constitutional tort asserted under California Constitution is governed by

California's statute of limitations for personal injury).  Thus, because the complaint in this

action was filed on January 23, 2007, any claim based on events that occurred prior to

January 23, 2005, must be dismissed as untimely.[3]

The court notes further, with specific reference to the claims of false arrest, that "the

statute of limitations upon a § 1983 claim seeking damages for false arrest in violation of

the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run

at the time the claimant becomes detained pursuant to legal process."  Wallace v. Kato,

127 S.Ct. 1091, 1100 (2007).[4]

3.      Claims Against California Agencies

Plaintiff alleges claims against the California Business, Transportation, and Housing

Agency, and against the California Department of Motor Vehicles, a department of the

BTH.  The Eleventh Amendment bars from the federal courts suits against a state by its

own citizens, citizens of another state or citizens or subjects of any foreign state.  See

Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 237-38 (1985); Alabama v. Pugh, 438

U.S. 781, 782 (1978).  This includes state law claims brought against a state in federal

court under the supplemental jurisdiction statute, 28 U.S.C. § 1367.  See Raygor v.

Regents of Univ. of Minnesota, 534 U.S. 533, 541-42 (2002).  This Eleventh Amendment

---

[3] Moreover, any claims previously asserted by plaintiff in Harris v. Lake County, Case No. C-04-0603 EDL, which was filed on February 12, 2004, would be barred by the doctrine of res judicata.

[4] By contrast, limitations begin to run against an action for false imprisonment when the alleged false imprisonment ends.  Id. at 1095-96.

**United States District Court**

For the Northern District of California

1   immunity also extends to suits against a state agency.  See, e.g., Simmons v. Sacramento

2   County Superior Court, 318 F.3d 1156,1161 (9th Cir. 2003).

3        Unless a state has waived its Eleventh Amendment immunity or Congress has

4   overridden it, a state cannot be sued regardless of the relief sought.  See Kentucky v.

5   Graham, 473 U.S. 159, 167 n.14 (1985); Confederated Tribes & Bands v. Locke, 176 F.3d

6   467, 469 (9th Cir. 1999).  Consent to suit by the state "is effective 'only where stated by the

7   most express language.'"  Yakama Nation v. Washington Dept. of Revenue, 176 F.3d

8   1241, 1245 (9th Cir. 1999) (quoting Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S.

9   299, 305 (1990)).  Here, the State of California has not consented to be sued in federal

10  court with regard to the claims asserted by plaintiff, and the claims against the BTH and the

11  DMV must be dismissed.

12        4.      Claims Against Individuals Employed by the State of California

13        Suits under 42 U.S.C. § 1983 against government officials in their official capacities

14  are really suits against the government employer because the employer must pay any

15  damages awarded.  Butler v. Elle, 281 F.3d 1014, 1023 (9th Cir. 2002).  In such suits, the

16  real party in interest is the entity for which the official works.  Hafer v. Melo, 502 U.S. 21, 25

17  (1991).  A federal action for monetary damages against an individual state official acting in

18  his official capacity is thus barred by the Eleventh Amendment.  Doe v. Lawrence

19  Livermore Nat'l Lab., 131 F.3d 836, 839 (9th Cir. 1997).  Thus, the claims for damages

20  against Barry Sedlik and George Valverde, for actions taken in their official capacities, must

21  be dismissed.

22        The Eleventh Amendment does not bar suits against state officials in their individual

23  capacities.  Hafer, 502 U.S. at 31.  In this case, however, plaintiff has not pled any facts

24  showing any actions taken against him under color of state law by Barry Sedlik or George

25  Valverde, which caused a deprivation of constitutional rights.  The sole mention of Sedlik in

26  the amended complaint is under the description of the parties, where plaintiff alleges that

27  Sedlik "hold[s] title as Acting Secretary, with assigned duties including . . . being

28  responsible for the creation of, and/or the enforcement of, and/or the disbursement of,

United States District Court

For the Northern District of California

1   and/or the authorizing of the dispersal of administrative policy for the BTH[ ] to its

2   employees upon authority of state law" and that Sedlik is responsible for "training,

3   supervision, and discipline of" BTH employees.

4        The sole mention of Valverde in the amended complaint is, again, under the

5   description of the parties, where plaintiff alleges that Valverde is the Director of the DMV,

6   "with assigned duties including . . . being responsible for the creation of, and/or the

7   enforcement of, and/or, the disbursement of, and/or the authorizing of the dispersal of

8   administrative policy for the DMV to its employees upon authority of state law," and that

9   Valverde is also responsible for the "training, supervision, and discipline of" the DMV

10  employees.

11       While it is true that a supervisor may be held liable in his individual capacity for his

12  own culpable action or inaction in the training, supervision or control of his subordinates,

13  see Watkins v. City of Oakland, Cal., 145 F.3d 1087, 1093 (9th Cir. 1998), or may be held

14  liable if he or she implemented a policy so deficient that the policy itself is a repudiation of

15  constitutional rights and is the moving force of the constitutional violation, see Redman v.

16  County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc), there is no

17  respondeat superior liability under 42 U.S.C. § 1983.  Polk Co. v. Dodson, 454 U.S. 312,

18  325 (1981); Monell v. Dep't of Social Services, 436 U.S. 658, 692 (1978).

19       Moreover, vague and conclusory allegations of official participation in civil rights

20  violations are not sufficient to state a claim.  Ivey v. Bd. of Regents of Univ. of Alaska, 673

21  F.2d 266, 268 (9th Cir. 1982).  An individual's general responsibility for supervising the

22  operations of a state agency or department is insufficient to establish personal involvement.

23  See Ouzts v. Cummins, 825 F.2d 1276, 1277 (8th Cir. 1987).  Here, the allegations

24  regarding Barry Sedlik and George Valverde are inadequate in light of the rule that "a

25  plaintiff must allege facts, not simply conclusions, that show that an individual was

26  personally involved in the deprivation of his civil rights."  Barren v. Harrington, 152 F.3d

27  1193, 1194 (9th Cir. 1998).

28       A suit against a state official seeking prospective injunctive relief from

11

United States District Court
For the Northern District of California

1    unconstitutional state action is not a suit against the state, even if the state is the real party

2    in interest.  Kentucky v. Graham, 473 U.S. at 167 n.14; Ex parte Young, 209 U.S. 123, 159-

3    60 (1908); see also Armstrong v. Wilson, 124 F.3d 1019, 1026 (9th Cir. 1997).  Thus, in

4    theory, assuming plaintiff can state a claim against Barry Sedlik and George Valverde, he

5    could also seek prospective injunctive relief in connection with those claims.  As explained

6    below, however, in the discussion of the motion for preliminary injunction, the injunctive

7    relief plaintiff seeks is not available to him, as against any defendant.

8            5.      RFRA Claim

9            Plaintiff alleges that defendants' actions in enforcing the provisions of Vehicle Code

10   § 12500(a) against him violated the Religious Freedom Restoration Act.  RFRA provides, in

11   relevant part, that "Government shall not substantially burden a person's exercise of

12   religion even if that burden results from a rule of general applicability [subject to exceptions

13   not relevant here]."  42 U.S.C. § 2000bb-1(a).  RFRA requires the government to justify any

14   regulation imposing a burden on the free exercise of religion by showing that the regulation

15   satisfies strict scrutiny.  Worldwide Church of God v. Philadelphia Church of God, Inc., 227

16   F.3d 1110, 1120 (9th Cir. 2000).

17           In City of Boerne v. Flores, 521 U.S. 507 (1997), the Supreme Court held that RFRA

18   exceeded the authority of Congress under § 5 of the Fourteenth Amendment to enforce the

19   First Amendment.  The Ninth Circuit, along with most other courts, has concluded that the

20   Supreme Court invalidated RFRA only as applied to actions by state and local government.

21   San Jose Christian College v. City of Morgan Hill, 360 F.3d 1024, 1030 n.3 (9th Cir. 2004).

22           Accordingly, as there are no claims asserted against any federal defendant in this

23   case, the claim that defendants' enforcement of state or local law violates RFRA must be

24   dismissed.

25           6.      Federal Constitutional Claims

26           Plaintiff alleges that "defendants" violated his rights under the First, Fourth, Fifth, and

27   Sixth Amendments to the U.S. Constitution.  Title 42 U.S.C. § 1983 "provides a cause of

28   action for the 'deprivation of any rights, privileges, or immunities secured by the

12

United States District Court

For the Northern District of California

1    Constitution and laws' of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498,

2    508 (1990) (quoting 42 U.S.C. § 1983).  Section 1983 is not itself a source of substantive

3    rights, but merely provides a method for vindicating federal rights elsewhere conferred.

4    See Graham v. Connor, 490 U.S. 386, 393-94 (1989).  To state a claim under § 1983, a

5    plaintiff must allege two essential elements: (1) that a right secured by the Constitution or

6    laws of the United States was violated and (2) that the alleged violation was committed by a

7    person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988);

8    Ketchum v. Alameda County, 811 F.2d 1243, 1245 (9th Cir. 1987).

9       a. Free exercise of religion

10     Under California law, an individual applying for a driver's license or DMV

11   identification card is required to provide his or her social security number.  Cal. Veh. Code

12   §§ 1653.5, 12801.  Plaintiff claims that his religion forbids the use of social security

13   numbers, and, as the court understands the allegations, asserts either that his religion

14   forbids the use of the California driver's license because an applicant for a driver's license

15   must provide a social security number, or that it would be impossible for him to apply for a

16   driver's license because of the requirement that he provide a social security number.  In

17   any event, he alleges that the enforcement of Vehicle Code § 12500(a) – which makes it

18   unlawful for an unlicensed driver to operate a motor vehicle – violates his right to free

19   exercise of religion guaranteed by the First Amendment.

20     In Employment Division v. Smith, 494 U.S. 872 (1990), the Supreme Court analyzed

21   a free exercise of religion claim under the rational basis test.  Under this test, a rationally-

22   based, neutral law of general applicability does not violate the right to free exercise of

23   religion even though the law incidentally burdens a particular religious belief or practice.  Id.

24   at 879.  The Court held that the right of free exercise "does not relieve an individual of the

25   obligation to comply with a valid and neutral law of general applicability on the ground that

26   the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)."  Id.

27     There is no question that California may regulate driver's licenses.  See Miller v.

28   Reed, 176 F.3d 1202, 1206-07 (9th Cir. 1999).  Vehicle Code § 1653.5, which mandates

United States District Court

For the Northern District of California

the provision of a social security number by an applicant for a California driver's license, meets the rational basis test. It is a religion-neutral law of general applicability. Id. at 1207. Under Smith, the enforcement of this law does not violate plaintiff's right to the free exercise of religion. Id. Accordingly, the court finds that the first amended complaint fails to state a claim for violation of plaintiff's rights under the First Amendment.

b. False arrest and false imprisonment

In the third and sixth causes of action, plaintiff alleges that defendants falsely arrested him "upon fictitious criminal charges" under Vehicle Code § 12500(a). The third cause of action relates to the incident on June 14, 2005, when plaintiff was "stopped" and cited for driving without a license, and the sixth cause of action relates to arrests "on and through the period of June 2001 to the present day."

In the fourth and seventh causes of action, plaintiff alleges that defendants falsely imprisoned him "upon fictitious criminal charges" under Vehicle Code § 12500(a). The fourth cause of action relates to the incident on June 14, 2005, and the seventh cause of action relates to alleged false imprisonment "on and through the period of June 2001 to the present day."

The allegations of unlawful arrest and false imprisonment in the sixth and seventh causes of action are apparently references to the arrest in December 2001, subsequent to which plaintiff "agreed to accept the summary court probation offered by the court, and reapplied for a 'California State driver's license' as ordered by the . . . Lake County Superior Court;" the arrest in December 2002, subsequent to which plaintiff was jailed for four days and then released on $2500 bond; and the arrest in February 2003 for probation violation. The allegation of false arrest may also include plaintiff's detention for 30 to 40 minutes on February 18, 2007.

Because any claims relating to false arrest or false imprisonment prior to January 23, 2005, are time-barred, and because there is no indication that the criminal charges stemming from the February 18, 2007, incident have been dismissed, the court finds that any actionable portion of the sixth cause of action essentially duplicates the third cause of

United States District Court

For the Northern District of California

1   action, and that any actionable portion of the the seventh cause of action essentially

2   duplicates the fourth cause of action.  Accordingly, the sixth and seventh causes of action

3   must be dismissed on that basis.

4        In the third and fourth causes of action, plaintiff alleges that he was falsely arrested

5   and imprisoned in violation of his Fourth Amendment right to be free from unlawful

6   seizures.[3]  Plaintiff appears to be asserting, as a basis for the false arrest and false

7   imprisonment claims, that he was stopped on June 14, 2006, and cited for driving without a

8   license, and that the charges stemming from the June 14, 2006, citation were later

9   dismissed by the Lake County Superior Court.[4]

10       The Fourth Amendment proscribes "unreasonable searches and seizures."  U.S.

11   Const. amend. IV; Allen v. City of Portland, 73 F.3d 232, 235 (9th Cir. 1995).  A claim of

12   unlawful arrest is cognizable under § 1983 for violation of the Fourth Amendment's

13   prohibition against unreasonable search and seizure if the allegation is that the arrest was

14   without probable cause or other justification.  See Pierson v. Ray, 386 U.S. 547, 555-58

15   (1967); see also Allen, 73 F.3d at 235 (existence of probable cause is a major factor in

16   determining reasonableness of search or seizure).  Where an initial arrest is invalid, a claim

17   for unlawful detention may be cognizable under § 1983.  See Lee v. County of Los

18   Angeles, 250 F.3d 668, 684-85 (9th Cir. 2001).

19       Probable cause means "more than a bare suspicion; it exists when the officer's

20   knowledge of reasonably trustworthy information is sufficient to warrant a prudent person to

21   believe that an offense has been or is being committed."  Graves v. City of Coeur D'Alene,

22   339 F.3d 828, 841 (9th Cir. 2003) (citation omitted).  In the case of an arrest, probable

23   cause exists when, under the totality of the circumstances known to the arresting officers, a

24   prudent person would have concluded that there was a fair probability that the suspect had

25   committed a crime.  Peng v. Penghu, 335 F.3d 970, 976 (9th Cir. 2003) (citation and

26   _____

27       [3]  Plaintiff also asserts Fifth and Sixth Amendment violations in connection with the
    alleged false arrest and false imprisonment, but does not plead any supporting facts.

28       [4]  He does not state why the charges were dismissed.

**United States District Court**

For the Northern District of California

1   quotation omitted).

2        In addition to probable cause, in order for an arrest to be reasonable for Fourth

3   Amendment purposes the arresting officer must be "authorized by state and or municipal

4   law to effect a custodial arrest for the particular offense." Pierce v. Multnomah County,

5   Oregon, 76 F.3d 1032, 1041 (9th Cir. 1996) (citation omitted).  Under Vehicle Code

6   § 12801.5(e), a police officer is not entitled to arrest someone solely for being an

7   unlicensed driver.  If plaintiff had been arrested on June 14, 2005, solely because he was

8   an unlicensed driver, the arresting officer would not have had probable cause to arrest him.

9   See Bingham v. Schreiber, 341 F.3d 939, 949-50 (9th Cir. 2003) (where California Vehicle

10  Code prohibits arresting someone solely for being an unlicensed driver, such arrest is not

11  an action that a reasonable official could have believed lawful).

12       However, plaintiff does not allege that he was arrested on June 14, 2005, or that he

13  was jailed on that date.[5]  In the first amended complaint, plaintiff asserts that he was

14  "stopped" on June 14, 2005, by Sergeants Macedo and McMahon, and that his automobile

15  was "towed on the allegation that plaintiff was an 'unlicensed driver.'"  FAC ¶ 58.  In

16  general, the decision to stop an automobile is reasonable where the police have probable

17  cause to believe that a traffic violation has occurred.  Whren v. United States, 517 U.S.

18  806, 810 (1996).  Moreover, the Fourth Amendment requires only "reasonable suspicion" in

19  the context of investigative traffic stops, because the ususal traffic stop is more analogous

20  to a so-called "Terry stop" than to a formal arrest.  Berkemer v. McCarty, 468 U.S. 420, 439

21  (1984); see also United States v. Lopez-Soto, 205 F.3d 1101, 1104-05 (9th Cir. 2000).

22       If plaintiff intends to assert that the traffic stop on June 14, 2005, constituted "false

23  arrest," he must, at a minimum, allege that the officers that stopped him had no reasonable

24  suspicion to believe that a traffic violation had occurred.  He must also clarify which

25  defendants this claim is being asserted against.  As for the claim of false imprisonment,

26  plaintiff has alleged no facts supporting that claim.

27  _____

28       [5]  The only arrests for driving without a license are alleged to have occurred in
    December 2001 and December 2002.

United States District Court

For the Northern District of California

c.    Malicious prosecution

In the fifth, eighth, and ninth causes of action, plaintiff alleges that defendants implemented certain practices and procedures that caused him to be unlawfully arrested, imprisoned, and criminally prosecuted.  The fifth cause of action relates to the period June 14, 2005, through October 28, 2005; the eighth cause of action relates to the period from June 2001 to the present day; and the ninth cause of action relates to the period from January 2007 to the present day.

In line with the discussion of the causes of action for false arrest and false imprisonment, and the discussion of the statute of limitations for constitutional torts, the allegations in the eighth cause of action relating to events occurring before January 23, 2005, are stricken because any claims based on such events are time-barred.  In addition, the ninth cause of action fails to state a claim because there is no indication in the facts as pled that the charges stemming from the February 18, 2007, incident have been dismissed.

To state a claim under § 1983 for malicious prosecution, the plaintiff must plead facts showing that the defendants prosecuted him with malice and without probable cause, and that they did so for the purpose of depriving him of a specific constitutional right. Awabdy v. City of Adelanto, 368 F.3d 1062, 1066-70 (9th Cir. 2004).  Malicious prosecution actions are not limited to suits against prosecutors but may be brought against other persons who have wrongfully caused the charges to be filed.  Id. at 1066 (citing Galbraith v. County of Santa Clara, 307 F.3d 1119, 1126-27 (9th Cir. 2002).

Here, plaintiff has not alleged that he was prosecuted without probable cause, or that he was prosecuted for the purpose of depriving him of a specific constitutional right. Accordingly, the court finds that the first amended complaint fails to state a claim under § 1983 for malicious prosecution.

7.    Claims under the California Constitution

Plaintiff asserts violations of his rights under Article 1, §§ 1, 2, 4, 8, 11, 19, and 21 of the California Constitution, but he has not alleged facts supporting any of those claims, with the possible exception of the claims under §§ 1 and 4.

**United States District Court**
For the Northern District of California

1    Section 1 protects the right to life and liberty, the right to property, the right to safety,

2    the right to happiness, and the right to privacy.  The only facts that suggest a possible basis

3    for a § 1 claim are allegations that plaintiff's car was towed after he was stopped for driving

4    without a license on February 16, 2005, March 15, 2005, and June 14, 2005.  However,

5    plaintiff has not asserted facts showing that the towing was unconstitutional.

6    Section 4 protects the free exercise of religion and forbids any law respecting an

7    establishment of religion.  Plaintiff's claim that the law requiring that motor vehicles be

8    driven only by licensed and insured drivers violates his right to free exercise of religion

9    arguably supports the § 4 claim.  The California Supreme Court has not clearly articulated

10   the standard to be used for challenges to neutral, generally applicable laws under the

11   California Constitution's free exercise clause.  See Catholic Charities of Sacramento, Inc. v.

12   Superior Court, 32 Cal. 4th 527, 559-60 (2004).   However, the California Court of Appeal

13   ruled in a 1999 decision that the requirements imposed by Vehicle Code § 1653.5 and §

14   12801 do not violate the free exercise clause.  Brunson v. Dep't of Motor Vehicles, 72 Cal.

15   App. 4th 1251, 1255 (1999).

16   The court also finds that the § 4 free exercise claim must be dismissed for a

17   secondary reason.  Plaintiff cannot challenge California laws on the basis that they violate

18   California's free exercise clause by filing suit against Lake County and the Lake County

19   Sheriff's Officers based on their enforcement of valid provisions of the California Vehicle

20   Code.  Any such claim must be directed to the State of California, but such a suit cannot be

21   maintained in federal court because of the requirements of the Eleventh Amendment.

22   The remaining state constitutional claims are not supported by any facts.  Plaintiff

23   alleges no facts supporting a claim under § 2, which provides for liberty of speech and

24   freedom of the press; no facts supporting a claim under § 8, which provides that a person

25   may not be disqualified from entering or pursuing a profession or employment because of

26   sex, race, creed, color, or national origin; no facts supporting a claim under § 11, which

27   preserves the right of habeas corpus; no facts supporting a claim under § 19, which

28   provides for just compensation when private property is taken for public use by eminent

United States District Court

For the Northern District of California

1  domain; and no facts supporting a claim under § 21, which provides that property held by

2  an individual before marriage, or acquired during marriage by gift, will, or inheritance, is

3  separate property.  Accordingly, those claims must be dismissed for failure to state a claim.

4          8.       Claims under the California Civil Code

5          Plaintiff alleges violations of California Civil Code §§ 51(e)(3), 51.7, and 52.1 in each

6  of his nine causes of action.  Civil Code § 51 is part of California's Unruh Civil Rights Act,

7  which provides, in part, that

8          [a]ll persons within the jurisdiction of this state are free and equal, and no
           matter what their sex, race, color, religion, ancestry, national origin, disability,
9          medical condition, marital status, or sexual orientation, are entitled to the full
           and equal accommodations, advantages, facilities, privileges, or services in
10         all business establishments of every kind whatsoever.

11  Cal. Civ. Code § 51(b).  Section 51(e)(3) simply provides a definition of "religion," stating

12  that it "includes all aspects of religious belief, observance, and practice."

13         For purposes of the present action, the crucial element of the Unruh Act is that it

14  secures equal access to public accommodations and prohibits discrimination by "business

15  establishments."  None of the defendants named in plaintiff's complaint is a "business

16  establishment," and none of plaintiff's claims assert that he was denied access to a "public

17  accommodation.  Accordingly, plaintiff has not stated a claim under the Unruh Act.

18         Civil Code § 51.7 prohibits "violence, or intimidation by threat of violence . . .

19  because of . . . race, color, religion, ancestry, national origin, political affiliation, sex, sexual

20  orientation, age, disability, or position in a labor dispute."  A plaintiff must allege actual

21  violence or threat of violence to state a claim under § 51.7.  Winarto v. Toshiba America

22  Elec. Components, Inc., 274 F.3d 1276, 1289 (9th Cir. 2001).  Plaintiff has alleged no facts

23  showing any violence or any threat of violence by any defendant.  Thus, the § 51.7 claim

24  must be dismissed.

25         Civil Code § 52.1 creates a cause of action against anyone who "interferes by

26  threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or

27  coercion, with the exercise or enjoyment by any individual or individuals of rights secured

28  by the Constitution or laws of the United States, or of the rights secured by the Constitution

19

or laws of [California]."  As with the § 51.7 claim, plaintiff has not alleged any facts showing threats, intimidation, or attempts to interfere with any of his constitutional or legal rights, and the claim must be dismissed.

9.      Request for Attorney's Fees

Finally, the court finds that plaintiff's request for attorney's fees must be stricken. The case law is clear that pro se litigants are not entitled to an award of attorneys fees. See Kay v. Ehrler, 499 U.S. 432, 436-37 (1991); see also Corrigan v. United States, 27 F.3d 436, 438-39 (9th Cir. 1994) (purpose of statute permitting award of fees is to enable litigant to obtain assistance of counsel); Manos v. U.S. Dept. of the Air Force, 829 F. Supp. 1191, 1193-94 (N.D. Cal. 1993) (pro se litigant not entitled to attorney's fees because such fees were not actually incurred).

B.      Motion for Preliminary Injunction

1.      Legal Standard

To prevail on a motion for preliminary injunction, plaintiff must show (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases).  See Rodde v. Bonta, 357 F.3d 988, 994 (9th Cir. 2004).  Alternatively, injunctive relief can be granted if the plaintiff "demonstrate[s] . . . a combination of probable success on the merits and the possibility of irreparable injury."  Id.

A heightened standard is applied where the moving party seeks to enjoin governmental action taken in the public interest pursuant to a statutory or regulatory scheme.  NAACP, Inc. v. Town of East Haven, 70 F.3d 219, 223 (2d Cir. 1995).  To obtain injunctive relief against governmental activity, the plaintiff must show a persistent pattern of conduct violative of his/her rights.  City of Los Angeles v. Lyons, 461 U.S. 95, 104 (1983).

2.      Plaintiff's Motion

Plaintiff seeks a preliminary injunction "enjoining [d]efendants from arresting, prosecuting, and/or from seizing plaintiff during the pendency of this action."  He also seeks

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1  permanent injunctive relief.

2      Plaintiff asserts that certain "acts and practices" implemented by defendants are

3  designed to deprive plaintiff of his right to "travel;" and his religious freedom to be "free from

4  the need of government identification (mark of the beast) and/or permission."  Plaintiff

5  appears to be arguing that the enforcement of Vehicle Code § 12500(a) by Sheriff's

6  Officers McMahon and Macedo – specifically, the arrest of plaintiff for driving a motor

7  vehicle without a license – violates his rights under the United States Constitution.

8      Plaintiff asserts that he has a fundamental right to travel, and that this right is

9  violated either by the requirement that he be a licensed driver or by the requirement that he

10  comply with the state's requirements for becoming a licensed driver, including the

11  requirement that he provide a social security number.  Presumably, he intends to assert the

12  latter, as he alleges in the complaint that he was in possession of an International Driver's

13  Permit or License at various times in the past when he was arrested for driving without a

14  valid license.

15      Plaintiff also contends that the enforcement of Vehicle Code § 12500(a) against him

16  has caused him irreparable harm.  He argues that defendants' interference with his right to

17  "travel" interferes with his ability to obtain medical marijuana for his personal medical and

18  spiritual uses.  He claims that defendants' "practices" have caused him to be subjected to

19  physical agony, as he is "unable to 'travel' on the public roadways to acquire his medication

20  without the fear of arrest, seizure, and/or prosecution from defendants." He also contends

21  that defendants' interference with his ability to "travel" deprives him of his ability to practice

22  his religion at his "worship site of choice."

23      The court finds that the motion must be DENIED.  First, while plaintiff has argued at

24  length regarding the irreparable harm he has allegedly suffered and will continue to suffer

25  in the absence of injunctive relief, he has not provided a single argument showing a

26  likelihood of success on the merits of any of the claims alleged in the first amended

27  complaint.

28      Plaintiff has been arrested, on numerous occasions, for driving a motor vehicle

**United States District Court**
For the Northern District of California

1 without a driver's license.  In <u>Harris v. Lake County</u>, C-04-0603 EDL, he argued that Lake

2 County, the Sheriff of Lake County, the District Attorney of Lake County, and the Lake

3 County Board of Supervisors violated his constitutional right to travel by requiring that he

4 obtain a California driver's license.  The court granted summary judgment for defendants

5 on that claim.

6 In the present motion, plaintiff again argues that the enforcement of Vehicle Code

7 § 12500(a) violates his constitutional right to travel (though this allegation does not appear

8 in the first amended complaint).  The Supreme Court has long recognized a fundamental

9 right to interstate travel.  <u>United States v. Guest</u>, 383 U.S. 745, 757-58 (1966).  However,

10 "[b]urdens on a single mode of travel do not implicate the right to interstate travel."  <u>Miller</u>,

11 176 F.3d at 1205.  Moreover, there is no "fundamental right to drive."  <u>Id.</u> at 1206.  Plaintiff

12 remains free to travel anywhere he wishes – by airplane, train, or bus; as a passenger on a

13 motorcycle or in a private vehicle; or even by bicycle or on foot.  The only restriction on his

14 ability to travel is that he is not permitted to operate a motor vehicle on the public streets

15 and highways of California unless he holds a valid driver's license and the vehicle is

16 insured.

17 Plaintiff's theory in the first amended complaint is that he cannot apply for a driver's

18 license because he does not want to provide the State with a social security number, and

19 he is unwilling to provide a social security number because it is against his religion.

20 However, the court has dismissed plaintiff's free exercise claims for failure to state a claim.

21 Thus, plaintiff cannot show likelihood of success on the merits.

22 Thus, for the reasons stated above in the discussion of plaintiff's claims under

23 § 1983, it is unlikely that plaintiff will prevail on his claims that the arrests for driving without

24 a license violated either his First Amendment right to free exercise of religion, or his Fourth

25 Amendment right to be free from unlawful seizures.

26 Plaintiff also argues in his motion for preliminary injunction that defendants'

27 "practices" violate his rights under the Ninth and Tenth Amendments to the U.S.

28 Constitution (though this allegation does not appear in the first amended complaint).  The

United States District Court

For the Northern District of California

1  Ninth Amendment protects against the infringement of fundamental rights that are not

2  specifically mentioned in the Constitution, such as the right to privacy.  <u>See</u>, <u>e.g.</u>, <u>Griswold</u>

3  <u>v. Connecticut</u>, 381 U.S. 479 (1965).  However, plaintiff has identified no such fundamental

4  right.

5        Finally, the relief plaintiff seeks – an order enjoining "defendants" from detaining,

6  arresting and or prosecuting him at any time in the future – is beyond the jurisdiction of this

7  court.  If plaintiff believes he has been arrested without probable cause, he may file an

8  action under 42 U.S.C. § 1983, subject to certain restrictions.  If he believes he has been

9  wrongly convicted, his remedy lies in an appeal to the California Court of Appeal.  But this

10 court cannot order "defendants" to refrain from future legal arrests and/or prosecutions.

11                                        **CONCLUSION**

12       In accordance with the foregoing, the complaint is hereby DISMISSED, the request

13 for leave to proceed IFP is DENIED, and the motion for preliminary injunction is DENIED.

14       The dismissal is with prejudice as to certain claims and with leave to amend as to

15 other claims, as follows.

16       1.     All claims asserted against the BTH and the DMV are DISMISSED WITH

17 PREJUDICE, as are the claims against Barry Sedlik and George Valverde in their official

18 capacities.

19       2.     The claims against Barry Sedlik and George Valverde in their individual

20 capacities are DISMISSED WITH LEAVE TO AMEND.

21       3.     The claim under the First Amendment in the first cause of action and the

22 claim under the First and Fourth Amendments in the second cause of action are

23 DISMISSED WITH PREJUDICE.

24       4.     The RFRA claim in the first cause of action is DISMISSED WITH

25 PREJUDICE.

26       5.     The third cause of action for false arrest and the fourth cause of action for

27 false imprisonment are DISMISSED WITH LEAVE TO AMEND.

28       6.     The fifth cause of action for malicious prosecution is DISMISSED WITH

United States District Court

For the Northern District of California

1    LEAVE TO AMEND.

2        7.    The sixth cause of action for false arrest and the seventh cause of action for

3    false imprisonment are DISMISSED WITH PREJUDICE.

4        8.    The eighth cause of action for malicious prosecution is DISMISSED WITH

5    LEAVE TO AMEND.

6        9.    The ninth cause of action for malicious prosecution is DISMISSED WITH

7    PREJUDICE.

8        10.    The claims under Article 1, §§ 1, 2, 8, 11, 19, and 21 of the California

9    Constitution are DISMISSED WITH LEAVE TO AMEND to the extent that plaintiff can

10   allege facts to state a claim under those provisions.  The claim under § 4 is DISMISSED

11   WITH PREJUDICE.

12       11.    The claims under the California Civil Code are DISMISSED.  The Unruh Act

13   claim is DISMISSED WITH PREJUDICE.  The claims under §§ 51.7 and 52.1 are

14   DISMISSED WITH LEAVE TO AMEND.

15       12.    The prayer for attorney's fees is STRICKEN.

16       Any amended complaint must comply with Rule 8(a), and must give each defendant

17   fair notice of the claims asserted against each such defendant.  The amended complaint

18   must be filed no later than May 18, 2007.  Failure to file an amended complaint within the

19   stated deadline will result in dismissal of the action, as will a failure to amend in accordance

20   with the instructions set forth herein.

21       The date for the initial case management conference, previously set for May 3,

22   2007, is VACATED.

23

24   **IT IS SO ORDERED.**

25   Dated: April 17, 2007

26                                                                PHYLLIS J. HAMILTON
                                                                 United States District Judge

27

28